We wore out your colleague, so he's going to call in the backup. I represent Mr. Zinedine Tirouda and will be arguing on behalf of all the Tiroudas. The convictions in this case must be reversed. The record shows purposeful discrimination because the government's reasons at trial for striking two of the three Hispanic jurors is not supported by the record, does not survive a comparative analysis, and do not constitute reasoned explanations. I'd like to address Ms. Ojeda first. The government's first reason for striking Ms. Ojeda is she's a professor, a teacher. I always strike teachers to begin. This is objectively false. There are five teachers on the jury panel. The government struck only the two Hispanic teachers. Even if you consider that this is a professor, one of the jurors, Mr. Netzbaum, was an assistant professor. Also, Ms. Ambrow was an instructor at a community college, which suggests this is almost a professorial job. Second, this isn't really a reasoned explanation. On remand, the government's claim that its objection against teachers is this Johnny-can't-read theory, that they're more likely to help people if only they'd be educated, then they wouldn't be committing these crimes. Well, Mr. Zinedine Tirouda was a highly educated man. I believe he has two master's degrees in civil engineering and at the time was an engineer for Caltrans. There was no uneducated people on trial here. It was not a situation where it's someone simply committing a crime because they can't do any other job. So it had no reasoned explanation for this specific case. The next reason that the government stated was she has experience with foreign documents and the others don't have that. Again, this is not supported by the objective facts. Ms. Alheida, during four years, said her experience with foreign documents is because she immigrated from Mexico. There were two other juries. One, she immigrated from Scotland and had experience with foreign documents. The other one immigrated from the former Soviet Union and had experience with foreign documents. Specifically, that's Ms. Lombirsky. She also helped immigrate an aunt of hers, so she had even more experience with foreign documents and had worked as a file clerk when she first came to the country that dealt extensively with documents, but it doesn't say whether or not it's foreign or not. Again, this is also not a reasoned explanation because the prosecutor's case in this, and I quote from his voir dire, this is a case where we're going to create history through documents after the fact. You would want someone experienced in documents in that type of case. Another jury that I forgot to mention, Ms. Sample, she testified that she worked in, I think, it's international projects, and she said that her experience in foreign documents was extensive and that all her job was is evaluating these documents. And this was very important because the documents actually, whether or not the foreign documents were in order, determined whether or not the contractors would get paid and were evaluated by the U.S. Government. So she had vast experience with foreign documents, more so than Ms. Ojeda. The government's final justification for Ms. Ojeda was I don't think her individual experience will translate with others. This fails a comparative or under a Batson analysis because the rationale is so underdeveloped we really don't meet what the prosecutor means by will this experience translate well with others. And if you just look at Ms. Ojeda's experience, she seems to be comparable, again, to the juror, Ms. Lombersky, who also immigrated from a foreign country. They had children around the same ages. They were both married to engineer husbands. Judging by the children, they're probably the same age. So there's other jurors that really compare with the life experience that Ms. Ojeda had. There's several other examples under this comparative analysis that shows that there's other jurors that have an experience. Even if you look at, well, is it her experience with foreign documents? And this ---- But in terms of overall, if you take the combination of factors, who compares with Ojeda? I would say the most comparable is Ms. Lombersky because she has experience with the foreign documents. She's immigrated from another country and appears to be the same age. The only missing feature with her is she's not a teacher, but, again, only the Hispanic teachers were struck and none of the non-Hispanic teachers were struck. So Ojeda is a researcher. Correct. In addition to she's a college professor, correct? Well, that's this researcher reason. This is a reason, this is one of the new kind of what I characterize as a new factor that the government never cited at the time of the Batson objection and was a reason that the district court relied on on remand. This Court cannot or a reviewing court cannot look at reasons that weren't stated at the actual hearing. Miller L. says, under Batson, the prosecutor has a chance to state its reasons. They should be specific and clear. Any much rest or fall with those reasons. This researcher reason was never given to the district court. Her background as a college professor whose job included researching foreign documents, that's in the voir dire, isn't it? It is not in voir dire that she had experience researching foreign documents. That could be somewhere. According to the government, not according to me. If you look at the colloquy begins on page, I believe page 109 of the excerpt of record. Basically, she's asked, does anyone have experience with foreign documents, particularly from an underdeveloped country? Her answer is, I've had to go through the process of immigrating to the United States. So, or, well, I have, is what she said, because I've gone through this process. So her, what she says is her basis of dealing with foreign documents is through her own immigration. Later on, she does talk about that she's a researcher. All she says is, I'm a researcher also. I've done research. So I'm sensitive to the use of official documents for whatever, say, conclusions they can. She never says that she is a researcher of foreign documents. Not at all. That's not in the record. It may be one possible theory, but if it's just a possible theory, that weighs in favor of pretext. I believe in Lewis v. Lewis, that case, one of the factors that the government relied on was that a potential juror's relatives worked in a jail. The court said only a possibility existed that the jurors worked in the jail. So because of this just a possibility, that wasn't enough. That kind of showed pretext. And another thing is, if there is ambiguity here, and this is in Miller L., in Kessler, it's the government's obligation, if they're going to base a strike on some reason that's not clear from the record, that they should follow up and question the individual juror about that reason. Mr. Wheat had 15 minutes to conduct four-year and never asked any questions of Ms. Ojeda, did not try to clear up anything about whether or not she was a researcher of foreign documents or had any foreign document experience other than what she stated was her own immigration to the United States. I'd like to turn to the reasons for Mr. Rodriguez. Again, the government now is claiming a new reason, and that is that they're relying on the fact that Mr. Rodriguez had problems allegedly crossing the border with drugs. I again want to mention, Miller L. specifically says you have to rest and fall on the reasons given at the time, and this brother was arrested by the same agency was not stated by the prosecutor. And this is very important as far as the reasons stated at the time. Miller L. says it's an error as a matter of law to go back and look for different reasons. In that case, one of the jurors made a comment that, well, the death penalty may be you may get a someone may get a break under the death penalty because they really don't have to suffer. The Supreme Court, and at the time of the Batson challenge, the prosecutor didn't mention that reason. At a later Batson hearing, the prosecutor says, well, one of my reasons for striking that juror was his statements on the death penalty. The Supreme Court says, no, no, no. It's an error as a matter of law to go back and rely on a factor that wasn't stated. So the district court, whatever deference you must give it, erred as a matter of law by finding by making a determination, relying on the brother, and relying on the research documents that weren't presented in the original ones. The other thing about the brother is not even clear, and the prosecutor is saying here, well, it's the same agency that's involved, so they might be biased against the government. Well, there's nothing in the record that says what agency, who he's arrested by. Mr. Rodriguez's actual statement is he's crossing Mexicali to Mexico. For all we know, he's arrested by Mexican authorities or, say, it was coming into the United States. Sometimes these cases are turned over to the State of California. But the real issue is even, I think, the district court said that this has nothing to do with this case. Can you set it aside? And Mr. Rodriguez agreed. And that's kind of similar to this little personal gripe reason that the government gave. Again, the government didn't take any opportunity to question Mr. Rodriguez about whether or not this so-called being hassled at the border would carry over. Finally, the other reason stated by the prosecutor was Mr. Rodriguez was single, had no children, was unemployed, and had no stake in the community. In both briefs, I've supplied a laundry list of people that are single, not married, and could be considered to have no stake in the community. There are other unemployed people. And it's not even clear that Mr. Rodriguez wasn't unemployed. There is a misstatement on the government's brief where they're talking about the court's objection. It says that he worked in the Chino Valley School District. The transcript actually says he works in the Spring Valley area. So none of these reasons hold up when under close scrutiny. With that, I'd like to reserve the rest of the time for rebuttal. Roberts. You may. Good morning. Michael Wheat for the United States. There was no purposeful discrimination in this case. The two strikes that the government used against these two jurors were properly exercised, and Judge Gonzalez held a hearing on that and found that to be the case. She found the government did not discriminate against Hispanics in any way. Ms. Ojeda and Mr. Rodriguez were unique in characteristics and a combination of factors that were pertinent to the facts of this case. In this case, the three defendants were involved in an immigration fraud that involved creating false documents to smuggle an alien into the United States, a visa fraud, and also in a false passport scheme. In that scheme, Zenedi Taruta indicated that he had been born in Meridian, Mississippi, and he proffered in Meridian, Mississippi, the testimony of his mother and his father. To counter that, the government had discovered that Zenedi's father had worked for Michelin Tire in Algeria and had the employment records that were kept by Michelin Tire to show that he was in Algeria on the date that he was supposed to be present at his son's birth in Mississippi. So we had not only the foreign official records from Algeria that were created to that showed from Michelin, a French company. And the government was aware of that in making these selections. Ms. Ojeda was a professor at San Diego State. On voir dire, she stated that I am familiar with the forms also from France, which is not my country. That's at page 109 and 110. Each country seems to have certain details that sometimes it's kind of hard to bit. And that's where I come from. And it's that interpretation and her experience with French documents, foreign documents, and research in particular that was of particular concern in striking her here. Do I prefer to strike teachers? Yes. Do I have the luxury of striking every teacher from a panel? No. And when that occurs, when there are a group of teachers that exceeds the government's must determine, okay, which one of these individual jurors can be struck or should be struck in this case. And the factors for Ms. Ojeda are very clear. She is a researcher. I am a researcher. And also I have done research. And I am sensitive to the use of official documents for whatever. Let's say conclusions we can or we should try to arrive to. I did not want an expert in that jury room that had an expertise above and beyond the other jurors in that case. Counsel points to Ms. Lomboski. Was that offered at the original hearing? At the original hearing, I stated in there that her experience would not translate well with the other jurors. I didn't go through and say, and she is a researcher at San Diego State University. The judge had just sat through the voir dire. The judge was there. And in response to that, the response from the defense was nothing. No response. They didn't say that's not true, that's incorrect. Nothing. The record on their part is devoid of any response to that. The court issued a ruling. And a similar thing for Mr. Rodriguez. He indicated that he had a personal gripe at the border. I knew that in this case I would be calling witnesses from the United States Customs Service, from the Immigration and Naturalization Service, to talk about customs people, how it's crossed, what the inspectional process is, how the records are kept. I was aware of that. He had a personal gripe in this case against people who had prosecuted his brother. Now, counsel says, well, you know, some of those cases go to the DA's office. Well, whether the case is prosecuted by the DA's office or by the United States Attorney's office, the investigating agency in all of those cases is still the Customs Service and the Immigration Service. So whether it's DA or U.S. Attorney, his gripe is with the people at the border who do the inspection. And that was his problem, his concern. I didn't want that bias carried over into the jury's determination. His race had absolutely nothing to do with the government's determination to strike him as a juror. He had a problem with his brother, and he had a problem with his personal gripe at the border. Those ---- Well, that again, is that something raised at the original? I said that he had a personal gripe at the border. That's the issue that I brought up with him. And as far as there being an error in the brief, there is no error. The court reporter in this case issued a correction to that page, and the corrected page does say that he had last been employed by the Chino Valley School District. That correction is a matter of record, and it's not that he worked in the Spring Valley. It's the Chino Valley. Chino Valley is not where he was living. He's now living in the Imperial Valley, which is at the other end of the State, and he's unemployed. That's why I say he has no stake in the community. He had last worked in Chino. He's now in the Imperial Valley, and he has a personal gripe at the border. Those are the government's reasons and concerns for striking him, not his race. We didn't strike Ms. Ojeda because of her race. She had a specialized knowledge and expertise that she brought that the other jurors didn't have that wouldn't translate well with those jurors, in my opinion. And that's why I struck her, for no other reason, not because of race at all. And Judge Gonzales, whose decision in this case is entitled to great deference and is reviewed for clear air, had a lengthy hearing. She listened to the brief. She listened to the arguments in this case, and Judge Gonzales concluded that there was no racial discrimination here. And she carefully considered that, and I'd urge the Court to affirm her decision in that regard. Absent any other questions, thank you. Thank you. As to Ms. Ojeda, what the prosecutor has just said is vastly different from what he said during the Court. There was no mention of this researcher in the government's proffer, and there was no mention that he did not, I believe what he just said was, I did not want an expert in that jury room. In contrast, it was, I don't think her personal or her individual experience will translate with others. It had the reasons given then do not support what he said then. The reasons given now are different. Well, here's a little concern I have. I take your point, but was there an objection made at that point to the adequacy of the explanation that the prosecutor gave? That is unnecessary. I believe it's under Lewis v. Lewis. Well, the problem is if there's no objection to it, it's sort of, I mean, in the context of being in the midst of voir dire and everybody having a sort of a shared view of what the context is, a statement of it would not translate well may not be precise enough. But then if nobody calls it to the attention of the Court that there's something a little more, what do you mean it won't translate well? Objection, Your Honor. That doesn't carry it. It sort of lets the thing go through. And now we're sitting here a long time after and where the district judge who was there has gone through a hearing and did have the benefit of seeing both the original context and hearing your argument in this respect. Where does that leave us? Well, it leaves you with it's not unfair. All that's necessary is the General Batson objection. This Court has clearly held that. And the reasoning is solid. Because it's the Batson context itself that puts a prosecutor on notice. He better at that time state his reasons in the most specific way he can. And the reasons he's saying now is different from the reasons he said there. And that's enough to infer discrimination in this case. Just real briefly on Mr. Rodriguez. On this Chino Valley v. Spring Valley. I'm sorry. I was not aware of any transcript change. The government didn't submit a supplemental excerpt of record. And I just submitted the transcript that I had. But whether or not it's Chino Valley or Spring Valley, Chino Valley is not halfway up the State, as the government claims. It's a couple hours. I thought Imperial Valley was. Pardon? You said Imperial Valley was. I believe what he's what Mr. Wheat's saying now is the transcript, the revised transcript says Chino Valley School District. If that's the case, Chino Valley School District is basically, I think, just east of here, and it's approximately two, two-and-a-half-hour drive from Imperial Valley or from Calexico, where Mr. Rodriguez lived. And as to the focus of the government's argument of he had a personal right, well, that may be one legitimate reason. But this Court and the Supreme Court held that when those other reasons don't show up, such as single, no children, unemployed, no stake in the community, don't hold up, that's a reason to mistrust the one reason. That goes to the credibility, and that's what we have to defer to Judge Gonzales on, isn't it? In this case, I don't think so, because when she made this determination, it was several years after the fact, and she didn't rely on anything like, well, I remember the juror's demeanor on, I remember Mr. Wheat's demeanor. It was her reviewing the cold transcript just as you're doing, and so if there's any deference to be given, it shouldn't be great in light of the procedure of this case. Roberts. Do we know that? I mean, do we know that she didn't remember the trial and she didn't remember the circumstances? Or is that one argument that could be made? In her ruling, I believe she states what she's ruling on. She says, I reread, and she mentions the board year regarding Mr. Rodriguez among other transcripts she read. And she doesn't mention at any point during her ruling that she's relying on any contemporaneous observations of demeanor or anything that would reflect on demeanor. You know, you made quite a lot of point in your brief about Mr. Wheat's assertion that he always strikes teachers, and Judge Gonzales, which obviously isn't true, he doesn't always strike teachers, and she specifically addressed that in her findings. And she said, I find him credible, notwithstanding that. I don't believe the word credible is anywhere in her findings. Well, but that's the clear import. She considers the misstatement and says it doesn't outweigh the other reasons that are given. And I raise that because it seems to be analogous to what you're saying about Mr. Rodriguez, that some of it holds up, some of it doesn't. And there's a credibility determination that's made by the district court. And I don't see in the case law any distinction between great deference in a case where the district court is relying upon contemporaneous recollection and great deference where the district court is relying upon the record. Great deference is great deference. I mean, it's still the credibility determination was made. Actually, if you read when it says great deference, usually the very next sentence is because the district court has the opportunity to view things such as demeanor. And all those cases dealing with that mentioned demeanor evidence. And besides, regardless, this Court has repeatedly reversed against a court making these credibility determinations, Miller, Elk, Kessler. I think we have your point. All right. Thank you very much. We appreciate the argument on both sides. And the case argued is submitted. And we will take a short recess and then resume with the last case on calendar. Thank you.
judges: Fisher, Clifton, Fogel